All right, so we're turning to our last case for argument, and it looks like both of our counsel are appearing by Zoom. You may have already heard the drill, but you have 15 minutes for the appellant. Please let us know your name and how much time you plan to reserve for rebuttal, and you may proceed. Thank you, Your Honor. May it please the court, my name is Brian Hardy. On behalf of the appellant and the plaintiff in the underlying case, the Alexis brothers, may it please the court, at the heart of this case is a choreographic performance of peace and discord, which conveys emotion and dramatic and theatrical effects. While choreographic works are unquestionably protected, there has been little case law addressing choreographic works, and as such, the court has afforded an opportunity in this case to ensure that choreographic works are squarely placed in the same category and afforded the same protection as all other performing arts. And that's going to be critical throughout this analysis today is the fact that this is a performing art, a theatrical embodiment. The district court clearly found that the Alexis brothers enjoyed a likelihood of success demonstrating a valid copyright with respect to their act. The defendants had access to the act that the Kolev sisters act was at least in part very similar and or virtually identical to the Alexis brothers act. The district court enjoined only a portion of the act and because it erred in its application of the extrinsic test by failing to consider the substantially similar artistic expression that was present in both acts. Mr. Hardy, could I could I ask? Absolutely. We are reviewing from the grant of a preliminary injunction, which means that our review is necessarily limited. There has not been a trial or a trial of the Kolev sisters act. There has not been a trial with the amplification of the record as to how to determine this fairly novel area of law. Isn't it true that we're reviewing the district court's determination under an abuse of discretion standard? Correct, your honor. So if that's the case and there are these close questions on the law or the application of the law or the factual findings, shouldn't we be particularly deferential here since our place is not to try to create new law about choreography necessarily on a preliminary injunction motion? The application of the law is exactly what you stated. It should be applied and equally applied. The deference that you'll be providing here is going to be the facts. The judge in this case did an extreme analysis where she went through and viewed over the period of a significant hearing viewed each and every sequence of events for the totality of the act comparing both acts. You know, that was that giving strong deference to her review and her review process would be afforded. But her application of the law with respect to this case is something that we believe that this court has the ability to review and in this case find that it was it was improperly applied given the facts that she found as a part of her order. And that's let's grant let's grant that point. Your position, I believe, is that with regard to segment one, the judge erred on the question of similarity under the extrinsic tests that the Ninth Circuit has employed consistently in copyright cases. But the extrinsic test seems to me to necessarily demand some sort of in this context, which is novel and has not been spoken on by the court previously, at the minimum, some sort of analytical or expert testimony of people who are familiar with the types of movements and choreography that occurred in the in the acts. And that that just didn't occur here. So on what basis can we can we say other than we we feel the same way or we feel differently? We've looked at it as well, that the district judge was wrong. Well, in this particular case, I think that you can look at is the extrinsic analysis that was undertaken by the judge. And all she did was look at the two videos side by I did that. I mean, I might agree with her. I might disagree with her. But, you know, in in doing her review, she did it in the functions as the taking a sneak peek at the evidence during this preliminary injunction hearing, right? So that she could make that determination as a preliminary matter. And in doing so, let me ask you, counsel, put a little more specificity as to what Judge Murphy was saying. If she had had an expert come in at both sides of present an expert, I'm pretty sure she would have saw that the young brothers had done a very, very similar trick as to what segment is what segment to. She would have saw that all these other people were doing that trick. She probably would have heard testimony that said that trick. That trick is sort of like one trick that people do because it's everything sort of built together. You know, you you start up and you somersault under and the whole thing sort of is. I mean, you could, in theory, break it into constituent parts, but it would be very different to just have you lift people up on your legs versus somersaulting under and having them. So if she'd heard all that, I think there's a very good chance that she probably would have realized, wait a minute, this is this is sort of there's these tricks that you do. And this is one trick. Segment two is one trick. And she probably wouldn't reach the conclusion she'd reached. Well, this is what I heard that you do disagree that she would have heard that the other side's expert probably would have said that. You decide to present the underlying videos. Let's start with that, right, that they were presented here on appeal. And so we've got those two videos that you've taken a look at on appeal here. No, but the difference is, the difference is, is that none of us. I mean, I can't remember if I've even seen Cirque du Soleil. Like I'm watching these videos and wow, this is really impressive stuff. But like, I don't know that like what I after reading into and digging into it, I kind of get the impression that that that segment two is just one trick that gets done a lot. Like, I don't know who invented it. I don't think these guys invented it. And so she probably would have heard that she in if she'd have done that, she may well have found that it wasn't novel and has some other reason. But she would have heard more about that. Instead, I think if you're just looking at it and all you see as well, that looks the same as this. During the preliminary injunction hearing, the judge took a look at exactly what was there. She had the declarations of the parties that were able to be able to testify as to what those particularities were with respect to this. And we're not claiming any type of copyright on the particular pose or and to use the phrase trick. You can use that here. The judge used, I think, poses. Right. And she used this phrase pose for a reason. So a couple of years ago, I decided to be romantic and take my wife to get some dance lessons she'd been bugging me to do for decades. Right. And when we went and learned these, I wasn't very good at it and we didn't do it for very long. But when we did it, there was like we didn't just do like some twirly thing or something like that. There was like some called the chainsaw and had like four moves and they're put together. And we were learning these. So you could call them tricks. You know, we were learning these. And that's what it seems to me that that segment, too, is. I know that because I took some thing. And so she wasn't that if you break it down a constituent, you know, for a dance move, a twirl or something like that. But then you say, yeah, but the four moves together is choreography. But if everybody does that and it literally has a name that people use, then then that's not copyrightable either. So what we're talking about here is more than just a sequence of poses. That's and we will agree that poses are not in themselves copyrightable. But what we have is and this is going to be similar to Swirsky and we want to talk. And Swirsky, if you remember and recall, they looked at the chorus of that particular case and the court observed that under the approach that was given by the district court where they did do an analysis side by side and they looked at, you know, I think the quote is that they could conclude that two, two, two, one, two, three did not match two, two, four, three, two, three or a half note is not identical to an eighth note, I believe is the quote from that case. What the district court missed in Swirsky and what was pointed out by this court was that anyone who listens to the two songs, when you listen and observe them in their totality, they were going to conclude, as this court did, that it was the chorus of that song that was copied. And that's what you look at here. There were tangible elements. The elements that you've talked about that this court addressed in Swirsky are there are tangible elements that have to be looked at. And in this case, when you look at, and there were a number of tangible elements looked at by Swirsky, that included cadence, verse and chorus relationship, the unique ending, rhythm, harmony, tempo, structure, chord progression. Those are all things that were looked at as tangible elements. And the court here looked at some of those tangible elements here as well. Sir, Swirsky states that the extrinsic test requires analytical dissection of a work and expert testimony, breaking down the works into their constituent elements and comparing those elements for proof of copying as measured by substantial similarity. I don't know that that was done by a simple comparison of a judicial officer or here three judicial officers between movements in two sections of two videos. All of the evidence was provided to the court. Swirsky said it requires analytical dissection of a work and expert testimony. In this case, we're dealing with a preliminary injunction. And in dealing with the preliminary injunction, the court takes a look to determine whether there is a substantial similarity. And in conducting that analysis, the court gets to take a look at the evidence and see whether based upon its review of the evidence, it can make a determination as to whether there is or is not substantial similarity. Okay, so that would be the intrinsic test that a fact finder or a jury member or a trial fact such as a judge on a bench trial would make. It's not the extrinsic test that requires analytical dissection of a work and expert testimony set forth by Swirsky, which you're relying on. Even under the intrinsic test, the court found that the ending of this particular, the finale, if you will, was virtually identical. And that's because even under the intrinsic test that you're describing, that was, it is in every sense of the matter, a virtually identical act. Okay, so, you know, instinctively, I agree with you because I did, I did watch the video. However, playing devil's advocate, there's no question that the women in the final or concluding movements had different leg positioning, did not fall flat on their chest, the lower performer. I mean, there were differences that could lead a lay person or anyone else or me to say there were substantial variations. I mean, I don't know. I'm not an expert. I don't know if on a choreographed act or not. I would assume a producer from Vegas or Los Angeles or whatever would, but we don't have that here. So, apart from the fact that, again, this is a preliminary injunction where there's no evidence to support anything to the contrary or what you've cited here, in the application of this, she applied the thin test. And this should, this is a copyright of an artistic work, which should have been given the broad protections. Or it's been referred to sometimes as the thick, but it's the broad protections that are afforded copyrights. And if that had been afforded the broad protections, which are appropriate under the law for artistic works, this is not simply a compilation of or database or a vodka bottle. This is actually an artistic work. It's a choreographic work that it should have been afforded broad protections and the substantial similarities between these two things under that broad protection. Then I would question you whether or not the dance moves that Judge Van Dyke and his wife learned at Arthur Murray were entitled to thick protection as well. I wouldn't think you'd answer that yes, would you? No, under Circular 52, we are very clear that the U.S. Copyright Office would not allow that. But under that same circular, you can see what is afforded protections. And what is afforded protections by the Copyright Office and has been defined to be our movements in defined sequences and in defined spatial environment that are happening on a stage that are happening that have a story and or a theme to them that are a composition that are presented before an audience. And I'm sure that Judge Van Dyke, as well as he danced, wasn't on a stage within a performance in front of a number of people every night like they are in Mystere. Let me ask this. Is the district court's determination of substantial similarity between, let's say for the finale, for the final two minutes, is that accorded? Do we review that for clear error or is there a mixed question of law and fact in that determination? I think that would be a clear error issue, right? I mean, she was the trier of fact in that particular situation and she served as the judge in that particular deal. So she has to be reviewed and to find out whether that was or was not clear. She found it to be virtually identical. The question is, is when applying that same analysis, we're looking at a substantially similar analysis, which she should have been applying on the law side of it. And in that particular case, the middle section or the intro section that she found to be very similar, but not nearly identical, should also have been afforded the same law. I have to ask you something. Where did the authority for these two segments come from? Did you all agree to that and she reviewed what you agreed upon and proffered to her? Or did the district judge come up with the two segments? Because my understanding is you have to compare choreographic material as a whole, notwithstanding the fact that I think one minute of copying can constitute a copyright infringement. But who came up with this idea to take what appears to be an eight or ten minute performance and just focus on two segments of approximately two minutes each? I see my time has expired. May I respond? Yeah, you may. So in preparing for this hearing that we had, we presented a copy of the performance that was the and also a copy of the performance that was performed by the Koloff sisters in their totality. They were both provided and the parties during that hearing, and if you look at the hearing transcripts on that, you'll see, went through an analysis of the total of each of them and identified stuff. And as the court went through, she did her analysis and found these two particular segments and extracted them from the totality of the sequence and said, these are the two most... I thought somebody suggested three segments and she took two of them and put them together. Is that right? Segment one and two, she put together a segment one and then segment three, she made segment two. No, I believe that we had, everybody, finale looked like, and then we asked her to take a look at it as a whole and she extracted those particular screenshots that were presented multiple times during the presentations that were done during the hearing that showed a number of different sequences. And she selected the Alexis brothers actually identified three segments, but the first two occurred right after another. So I don't see a reason to analyze them separately. So she's going to combine them. We presented multiple segments. Do we have any more questions? So we have this weird setup here where you have a cross balance. So in theory, you would go, then the other side could go, then you would go, but you don't have any rebuttal time left. But what I'll do, we might not give you a rebuttal unless either my colleagues have questions they want to ask you. So we'll just go ahead and let your colleague on the other side go for his fault for 15 minutes. And then I'll ask my colleagues whether they have any questions. I understand. Thank you for your time today. Thank you. May I please the court. My name is Brian Terry. I have the opportunity of representing the appellees cross appellants. And again, I don't need to reserve any time because the issues are pretty intermingled and I'll just go ahead and deal with them all together. I represent Cirque du Soleil, Treasure Island, and the Kolev sisters, Michelle and Nicole. Our position is really pretty clear, I think, your honors, and many of the questions that have been articulated today hammer on some of those issues. The lower court went ahead and erred in some factual issues and some legal issues. And one in particular, as counsel has already acknowledged, the parties agreed that the poses cannot be copyrighted. But that one segment that the court that the judge analyzed and afforded copyright protection to that finale, that is a series of elements that really comprise one pose and cannot be copyrighted. As a result of that, the judge clearly erred in that. Whether or not... The copyright office provided protection for... I mean, this is intellectual property and highly skilled movements that these gentlemen engaged in and went out and got legal protection for from a government agency. Well, the government agency acknowledged the filing of the copyright. There was no independent analysis done by that government agency to say each one of the choreography that you're presenting is, in fact, valid. They merely issued the appropriate copyright number. That was it. And then it's up to the court's judges to go ahead and evaluate that and make sure that, in fact, the issuance of that was accurate. And in this particular case, how the lower court evaluated that last segment, which is really a pose, and all the parties have agreed that that cannot be copyrighted. So clearly, that was error. You know, that final pose is... Oh, poses. You can't say that choreographed works can't be copyrighted. That's not right. No. And, Your Honor, I'm not saying that. What I am saying is the parties have already indicated and agreed, and the court agreed as well, that those poses are in the public domain. Those are open source. Clearly. They've been utilized for years. That's how your clients learned about them and performed, at the minimum, that final, quote-unquote, trick, if you will. That is correct. That is correct. But the point is, that cannot be a copyrightable event based on, A, the law, but also based on the facts as agreed to by all counsel and by the court. So, counsel, as I see it, it kind of comes down... There's a couple of things. One is the standard review and the deference we give, which is, you know, we're on a PI stage, so we're very deferential. But sort of one of the challenges is, it appears a little weird being that deferential to a district court judge that was doing the same thing, presumably, that we're doing, which is watching a video with no expert testimony, et cetera. So it kind of feeds into what both of my colleagues have said. So I would be interested in hearing from you on that, because I think, you know, that's the hardest thing for you, is that standard review that we have. And then the second question, I think, comes down to, on that segment two, the district court judge obviously treated segment two as a series of poses put together in a certain way, right? And then said the way you put them together... And the district court judge wasn't concluding that the handstand on the hands or the foot lifting up thing, you know, I don't know the names, that any of those were themselves copyrightable. But obviously, the district court had to have concluded that when you put them together in that exact sequence, it was copyrightable. And I think your position is, no, that that whole sequence is a trick. That whole sequence is a thing. It's like a dance move that I would have learned that had four independent things together. And so that, I think this whole case, at least on segment two, turns on that, which one of those. So what can you provide us that is helpful in determining between whether the district court was right that segment two was a series of uncopyrightable poses, but when put together that was copyrightable, or whether segment two was one single trick that it can't be copyrightable because a bunch of people do it. And the transitions are all part of the trick. Right. Well, in answering the second one first, your honor, it is our position that the segment two, the finale, is one pose. It is one sequence. And in the industry, it is our position. That is how it is viewed. There are, in fact, different elements that comprise that sequence, that trick, that pose, that comprise it. Actually, there's seven of them when you break them down. And the people who perform it in the hand-to-hand move their leg a bit during a lift. They may be flat on the ground compared to elevated, but the actual seven elements of that pose are the same with all of the individuals who perform it. So it's our contention, your honor, that that is one pose, that the judge was in error when she made a determination that those were separate poses and could be copyrightable. And so that's my instinct. But I know about as little about this topic as anybody. But in looking at it, that was sort of my instinct, was that this reminds me of when I took those dance classes and there was a string of things together and it had a name, you know, the chainsaw or the head, shoulder, knees and toes or something like that, you know, and it was like four moves. That's my instinct. But I mean, you're telling me, but I have Judge Navarro, who probably knows more about this than I do, thinking that, no, it's not. And you have me. So what do I do with that? Like, do I do I just second guess her? I don't think I can do that under the standard review. Well, I indicated, your honor, in our moving brief that many of these items should be remanded back to the court. There is no doubt that the court requested from counsel and myself supplemental briefing. She clearly had questions about how to approach this. In fact, I can't remember if it was in the covid era or what, but maybe I was sick and we couldn't attend oral argument. And the judge said, no, we're going to change this because I need counsel to be here to explain these to me. So in response to your question, I think the judge and has been articulated earlier, expert testimony clearly should have been utilized to be able to enlighten her as to in the industry, whether or not this is one pose, whether or not this is a transition or how the the underlying preliminary injunction that should be reversed and remanded back to the court aid for the evidentiary hearing of the trial. Go ahead and figure your trigger. Your trigger for that is that there should have been an expert because otherwise, I mean, if we do nothing, if we were to just say, you know, we have to defer. And so I have no idea whether Judge Navarro is right. But I but it's it's abuse of discretion. So since I have no idea whether whether she's right, you know, the tie goes to her. Right. Like if I was to do that, especially since this is a P.I., it would go back and you could still make all these arguments. But meanwhile, your clients are barred from being able to do this trick. But the way you overcome, you're saying you overcome that is by the fact that she should have the cases, the case language that Judge Murphy was citing. She should have had expert testimony before she made this kind decision. I am agreeing with that judge that it should be remanded back to her. I I suggest and what our position is that the preliminary injunction be expunged. She be reversed with the instruction that this is the way she needs to approach the case. Overall, I thought the judge did a very copious job in her analysis and going through the extrinsic and the intrinsic test and going through those points. I think there wasn't sufficient information for the court to make a determination on that final segment, whether or not that was opposed or whether that could be a copyright. Was there no expert that did did did be either side? Did you guys just not provide expert testimony or are much smarter now, judge, than we were then? I yeah, there was no expert testimony. Let me ask. Let me ask if if as I sit in here and listen to my colleagues, if the merits questions are a close one, we haven't talked about the other factors for a preliminary injunction, you know, beyond the likelihood of success on the merits. It seems to me that one would need to weigh those things as well before we overturn Judge Navarro's decision on the on the preliminary injunction. So can you speak to those other aspects about the harms or the interest involved here that would favor overturning the preliminary injunction as opposed to sitting back and letting the trial move forward and where you will have an opportunity to bring forward all this evidence, including expert evidence? Yeah, let me address some of those other issues, Judge. Thanks. One of the other items that an individual has to have, and I hope I'm answering your question to be able to have a valid copyright is you have to have originality. And that was an issue that the court just really never addressed originality. Though what we do know is that this particular pose, the finale that the court held was a formation or a trick by the brothers, that that had been informed, that that had been performed for decades before. So the originality element in finding, you know, for the purposes of the copyright analysis, you know, that was never adjudicated, and at least she never addressed it and indicated it was original, when in fact all the parties, I think, will stipulate and agree that it wasn't. Under the extrinsic test, I disagree with counsel, I think the court was correct when she analyzed that this would be thin protection. You have a compilation of unprotectable, uncopyrightable events that when you take those as a whole and you look at those, you analyze what type of protection is afforded, whether or not it's thick or thin. And the judge, I believe, was accurate. She found, given the constituent elements, that they're not copyrightable, that you would go ahead and afford thin protection. But I guess, I'm sorry to interrupt, but you're still speaking to the merits of the case, and I'm asking about the other factors, the non-merits related factors, as to why the judge was wrong in deciding that the Alexis brothers would suffer some irreparable harm here, and that there wouldn't be harm to defendants in this case, during the pendency of this preliminary injunction. In the, I clearly disagree with the judge as it relates to irreparable harm to the Alexis brothers. The Alexis brothers really argued that they had not been rehired back by CERC after the pandemic. And the court ruled in her order that, you know, the brothers were unable and to market to CERC as well, the entire show, because of this alleged copyright violation. Clearly, the brothers have the right to go ahead and put on their show for whomever they want. CERC contractually had the right not to rehire the Alexis brothers, if CERC wanted to. So, the court's analysis that there was a harm to the Alexis brothers because of this, I believe, is clearly without merit, and isn't supported by the evidence that was presented at all. Were there any of the other issues you wanted me to address? What about this, I thought I was waiting for you to, is there irreparable harm to the sisters? The sisters, the sisters are the only female act that we know of, ever, who have been able to do this particular finale, this particular trick, this pose. So, the irreparable harm to the sisters, are they still going on and doing the truncated portion of their show? Yes, they are. But they are not able to go ahead and perform what really was their calling card as the only female group in the world who's able to do this. So, clearly, that is irreparable harm. In fact, we've had argument and motions in the court because the sisters, with the injunction issue, it really dealt with the United States and it dealt with CERC. The sisters have been able to perform in did that final sequence, that final element. And when motions were brought before the judge, the court held, well, they were not enjoined from doing it there. They were able to go ahead and perform it in Europe. So, the sisters clearly had a desire to go ahead and continue performing this last sequence and were able to do so. So, it really is significant harm to the sisters when they are the only individuals known in the world who are able to do this to force them not to be One final question on my end. Is it your view that in a preliminary injunction proceeding, expert testimony is required? I understand it and I think we all agree that it would be helpful, but is there anything, one way or the other, pointing to a requirement of having put on expert testimony before arriving at this decision? Mandatory, Judge? No, I don't think it is. Advisable, in this case, with the facts as it came out, it clearly would be advisable. I'm sorry. I was going to ask a follow-up question to that. In theory, I could see where it's not mandatory in every case. Is your answer any different as to this case in the sense of, just because it wasn't mandatory in every case, I suppose we could have a situation where it was your view as to, I don't know what exactly you're answering, I think you're answering just generally, but as to this case, do you think it was necessary or not? I think, Your Honor, as the case developed and as we were at hearing, it became clear that the court did not have a firm grasp of the differences of what a pose is, of what a segment is, of what a transition is, and how all of those interplay in this theatrical presentation. And so, yes, in my opinion, that is why I recommend, at least for the relief, that on these issues it be remanded back to the court so they're able to do that. So, to be clear, your position is you're not sure whether you, just as a matter of law, you always have to in every case, but your position in this case is that it was mandatory in this case or that it should have happened in this case. When you say mandatory, I'm not saying it was, well, I'm saying clearly it should have happened and looking at it with hindsight and the court's ruling, I would say, yes, it should have been mandatory that it occurred. I mean, it's a little bit tricky to say it was mandatory if I understood you earlier to say that neither of you suggested it to the court, right? That is agreed. All right. Do either of my colleagues have questions for either side? In theory, we would go back and forth, but you're both out of time. I thank you, court, for letting us argue with you today. Thank you to both sides for your helpful arguments, and that finishes our day up. Thank you. Thanks so much. You all have a good day.
judges: VANDYKE, SANCHEZ, Murphy